```
IN THE UNITED STATES DISTRICT COURT
    WESTERN DISTRICT OF ARKANSAS
         FAYETTEVILLE DIVISION
```

RITA MILES                                              PLAINTIFF

VS.                    Civil No. 06-5162

WAL-MART STORES, INC.                                   DEFENDANT

### MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant's motion for summary judgment (Doc. 79), Plaintiff's response (Doc. 90), Defendant's reply (Doc. 94) and accompanying documents. Plaintiff Rita Miles alleges Defendant Wal-Mart Stores, Inc. violated provisions of the Sarbanes-Oxley Act of 2002, at 18 U.S.C. § 1514A, by retaliating against her because she prevented documents, subpoenaed in connection with criminal fraud proceedings against a former Wal-Mart executive, from being shredded. For reasons reflected below, the Court finds genuine issues of material fact precluding summary judgment. Defendant's motion is DENIED and this matter remains set for trial on **March 10, 2008.**

### I.  Background

In ruling on a motion for summary judgment, the Court is to view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). With that standard in mind, the Court recites the facts as follows:

Plaintiff has been employed by Defendant Wal-Mart since March 1999. In March 2005, she became an administrative assistant in Wal-Mart's Labor Relations Department, where she assisted with the organization of the departmental library. The organization involved a project to digitize library documents. On May 5, 2005, a grand jury issued a subpoena to Wal-Mart calling for production of documents concerning union-related labor relations from 1980 to March 2005. The subpoena was in connection with a grand jury investigation of a former Wal-Mart executive for suspected fraud. The subpoena covered documents being digitized in Plaintiff's department.

On May 24, 2005, Wal-Mart attorney Robert DeMoss sent an email to each member of the Wal-Mart Labor Relations Department instructing them to preserve all documents responsive to the grand jury subpoena. However, some 15 minutes later, a meeting was called in the library, where Plaintiff's project team was instructed to place paper copies of digitized documents in a tub for shredding.[1] Plaintiff refused to destroy documents that might be subject to the subpoena. (Doc. 92 ¶ 26.)

---

[1] Defendant contends the digitization project, from its inception, called for the destruction of documents following their digitization. Plaintiff contends the project did not involve the destruction of paper copies until the subpoena was issued, evidencing an apparent attempt to conceal the documents.

The parties dispute whether any documents were ultimately destroyed.

On May 26, 2005, Plaintiff called the former Wal-Mart executive that was the subject of the grand jury proceedings with the suspicion that documents relevant to the investigation, and potentially beneficial to his defense, were being destroyed in violation of the subpoena. They spoke briefly, and Plaintiff was later contacted by the executive's attorney to discuss the matter. On May 27, 2005, Plaintiff was contacted by and asked to meet with Tom Brown of the FBI and David Blackorby, then of the United States Attorney's Office. Later that day, Brown and Blackorby went to Wal-Mart's home office to discuss the handling of union documents in the Labor Relations Department. That meeting apparently led to an FBI investigation into the matter, during which the FBI seized documents subject to the subpoena. (Doc. 1 ¶ 14.)

Following Plaintiff's involvement in those events, Plaintiff alleges hostile treatment by her supervisors and coworkers. Plaintiff alleges retaliatory conduct, including destruction of her personal property that could be viewed as a physical threat to Plaintiff,[2] menacing surveillance of her activities, intimidating commentary relating to her complaints

---

[2] Plaintiff hung her coat on a hanger at work and returned to find it relocated and cut open, which was interpreted by Plaintiff and certain of her coworkers to represent a violent threat to Plaintiff.

AO72A (Rev. 8/82)

of mistreatment,[3] ridicule, insults, and a pattern of exclusion and isolation.

## II. Standard of review

A motion for summary judgment will be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material" fact is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A "genuine" issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 248. In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes*, 398 U.S. at 157. If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The opposing party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that

---

[3] Plaintiff's manager sent a department-wide email on December 1, 2005 cancelling the holiday party due to the "current red book climate in the department," referring to Wal-Mart procedures concerning complaint resolution. (Doc. 91 p. 29.)

AO72A
(Rev. 8/82)

there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256-57 (citing Fed. R. Civ. P. 56(e)). In order to withstand a motion for summary judgment, plaintiffs must substantiate their allegations with "sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy." *Gregory v. Rogers,* 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied,* 507 U.S. 913 (1993). A mere scintilla of evidence is insufficient to avoid summary judgment. *Moody v. St. Charles County,* 23 F.3d 1410, 1412 (8th Cir. 1994).

**III. Discussion**

Title 18 U.S.C. § 1514A makes it unlawful to "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against" an employee who acts:

> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by–
>
> > (A) a Federal regulatory or law enforcement agency;
> >
> > (B) any Member of Congress or any committee of Congress; or
> >
> > (C) a person with supervisory authority over the

    employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct); or

 (2) to file, cause to be filed, testify, participate in, or otherwise assist in a proceeding filed or about to be filed (with any knowledge of the employer) relating to an alleged violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

Thus, in order to prevail on a claim under the Act, a plaintiff must show by a preponderance of the evidence that (1) she engaged in protected activity, (2) her employer was aware of the activity, (3) she suffered an adverse employment action and (4) that the protected activity was a contributing factor to the adverse employment action. *Mahony v. KeySpan Corp.*, 2007 WL 805813, *4 (E.D.N.Y. March 12, 2007) (citing *Fraser v. Fiduciary Trust Co. Int'l*, 417 F. Supp. 2d 310, 322 (S.D.N.Y. 2006); *Bozeman v. Per-Se Techs., Inc.*, 456 F. Supp. 2d 1282, 1358 (N.D. Ga. 2006); *Bishop v. PCS Admin., Inc.*, 2006 WL 1460032, *1 (N.D. Ill. May 23, 2006) (No. 05-C-5683) (citing *Collins v. Beazer Homes USA, Inc.*, 334 F. Supp. 2d 1365, 1375 (N.D. Ga. 2004) (citations omitted). A defendant employer may avoid liability by showing with clear and convincing evidence that it would have taken the same adverse employment action in the absence of the protected activity. *Bozeman*, 456 F. Supp. 2d at 1358-59; *Collins*, 334 F. Supp. 2d at 1375-76. Plaintiff has created

genuine issues of material fact as to each of the elements of her claim. Viewing the record in the light most favorable to the Plaintiff, there is sufficient evidence that Plaintiff engaged in protected activity and suffered actionable adverse treatment as a result.

Plaintiff creates a genuine issue as to whether she engaged in protected activity such that she qualifies as a whistleblower under § 1514A(2). Section 1514A(2) extends protection from retaliation to individuals that assist in a proceeding filed or about to be filed relating to an alleged violation of § 1343. The executive subject to the grand jury proceedings was ultimately convicted of wire fraud under § 1343. Plaintiff assisted in those proceedings by providing information contained in the documents seized by the FBI and the USAO. Defendant contends:

> When Miles engaged in her supposed whistleblowing in May 2005, there was an ongoing "investigation," not a "proceeding" that had been "flied" or was "about to be filed." Throughout the history of this case, plaintiff consistently has described the [] matter as an 'investigation' . . . . While now belatedly asserting that there was a "proceeding" she assisted, plaintiff *does not even identify what that proceeding was*."

(Doc. 94 p. 8.) However, Plaintiff clearly identifies the grand jury proceeding against the former Wal-Mart executive, which led to his waiver of indictment, guilty plea and conviction, as the proceeding in which Plaintiff assisted. Plaintiff provided

assistance in response to a subpoena issued in connection with those § 1343 proceedings. An information was later filed against the subject of those proceedings on January 21, 2006. While some eight months elapsed between Plaintiff's protected activity and the proceedings in federal district court, Plaintiff's actions were in response to an outstanding subpoena in a § 1514A enumerated matter. Under such circumstances, where Plaintiff reacted to a subpoena issued in relation to a proceeding that resulted in a conviction under § 1343, a predicate offense which provides the necessary foundation under § 1514A for whistleblower protection, the Court must find a genuine issue of fact exists as to whether Plaintiff qualifies as a whistleblower.

Finding Plaintiff may qualify as a whistleblower under § 1514(a)(2), the Court need not address whether Plaintiff might qualify under other provisions of the Sarbanes-Oxley Act. Thus, the Court proceeds to determine whether Plaintiff creates a genuine issue of material fact as to whether she suffered an adverse employment action.

In order to show an adverse employment action, Plaintiff must demonstrate "employer actions that would have been materially adverse to a reasonable employee . . ." and "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."

AO72A
(Rev. 8/82)

*Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, __ (2006).[4] In *Mahoney*, the court found actionable retaliation where the plaintiff "was being isolated within the company, his performance evaluations changed dramatically, and he fell out of favor with [the Chief Executive Officer of his corporation]." *Mahony*, 2007 WL 805813 at *6 (citations omitted). Similar to Mahoney, Plaintiff contends she was isolated at work, excluded from events, newly held in disfavor by her superiors and given unfairly poor performance evaluations. While, unlike Plaintiff, Mahoney was ultimately terminated,[5] his termination was "part of a company-wide budget cut during which 55 non-union employees were also let go." *Id*. at *3. Here, there is evidence to suggest that, following Plaintiff's involvement in the grand jury proceedings, she was subjected to treatment that could dissuade a reasonable worker from supporting a complaint such as Plaintiff's. Certain of Plaintiff's coworkers filed formal

---

[4] While this standard was announced by the United States Supreme Court in connection with retaliation claims under Title VII, the parties agree that it has been applied by the Department of Labor Administrative Review Board. *See e.g. Powers v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union*, Case No. 04-111, 2007 DOL Ad. Rev. Bd. LEXIS 71 (ARB Aug. 31, 2007). (Doc. 81 p. 12 n3; Doc. 91 p. 21.) Defendant urges "that interpretation is mistaken," however, the Court finds it appropriate here. (Doc. 81 p. 12 n3.)

[5] While the fact that Plaintiff was not terminated or demoted may limit the remedies available to Plaintiff under the Sarbanes-Oxley Act, at this stage in the proceeding, the Court is limited to determining whether Plaintiff's claims are maintainable.

complaints on her behalf and corroborated her accusations of retaliatory treatment. Plaintiff alleges misdeeds, including the destruction of her personal property, intimidation, ridicule and exclusion, that, viewed in the aggregate, create a genuine issue of material fact as to whether Plaintiff suffered actionable retaliation. While the Court is aware that anti-discrimination laws should not be read to "create a general civility code," *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003), and "[c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law," *Id.*, the Court finds that the allegations in the case at bar create an issue as to whether actionable conduct, intended to dissuade Plaintiff from continuing with her claim of retaliation, occurred.

Finding evidence of protected activity and retaliatory conduct, the Court finds a sufficient connection to create a genuine issue of fact as to whether Plaintiff's employer was aware that she provided assistance in the grand jury proceedings and engaged in retaliatory conduct in response to Plaintiff's actions.

### X.  Conclusion

Based on the foregoing, the Court determines Plaintiff creates genuine issues as to facts she must prove to prevail on her claim. Accordingly, Defendants' motion for summary judgment

AO72A
(Rev. 8/82)

(Doc. 79) is DENIED.

IT IS SO ORDERED this 25th day of January 2008.

*/s/ Robert T. Dawson*
Honorable Robert T. Dawson
United States District Judge

AO72A
(Rev. 8/82)